## Clark v. Clark, Appellant.

Argued March 12, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*George Kunkel,* with him *Paul A. Kunkel,* for appellant.

*Herbert O. Schaeffer,* for appellee.

OPINION BY RHODES, P. J., April 16, 1947:

Respondent has appealed from the decree granting a divorce to her husband on the ground of indignities to the person. The master found that libellant's charge

of indignities was sustained by the evidence, and that libellant was entitled to a divorce. Exceptions to the master's report were dismissed, and decree was entered by the court below.

The record is voluminous and the testimony is conflicting. The court below in its opinion correctly pointed out: "The respondent categorically denied every accusation of the libellant and his witnesses. She had some witnesses who tended to support her denials, but the libellant also had witnesses who supported his allegations."

The master, before whom the testimony was taken and who saw the witnesses, recommended that a divorce be granted on the ground of indignities. The recommendations of a master are advisory only, and they are not controlling upon the court below or upon this court, but they should not be lightly disregarded. *Briggs v. Briggs,* 145 Pa. Superior Ct. 460, 463, 21 A. 2d 415.

We have reviewed the entire record, and we have reached an independent conclusion that the testimony was sufficient to show a course of conduct on the part of respondent such as to justify the decree of divorce entered.

"We have repeatedly said that it is impossible to lay down a general rule for the determination of what indignities render the condition of the injured party intolerable and his life burdensome. Hahn v. Hahn, 135 Pa. Superior Ct. 39, 41, 4 A. 2d 821. The circumstances of each case must largely determine whether the acts charged amount to such indignities as will justify the court in making a decree of divorce. However, indignities to the person, as recognized by the law, have certain fundamental characteristics which must be recognized in the appraisal of the evidence. In the first place, the indignities must consist of a course of conduct on the part of respondent. That conduct must have rendered

the condition of the libellant intolerable and life burdensome; and there must be evidence from which an inference of settled hate and estrangement may be deduced. Davidsen v. Davidsen, 127 Pa. Superior Ct. 138, 142, 191 A. 619. An isolated incident cannot constitute indignities to the person. And of course the indignities of which libellant complains shall not be such as he himself has provoked. Putt v. Putt, 118 Pa. Superior Ct. 74, 78, 180 A. 92": *Monaco v. Monaco,* 160 Pa. Superior Ct. 117, at page 118, 50 A. 2d 520, at page 521.

The parties were married on February 16, 1921, and lived together until February 22, 1940. There was one child born of this union, a daughter. Libellant and respondent had been married before, and each had three children by the former marriages; and for a time five of these children lived with libellant and the respondent.

The testimony of libellant and his witnesses established the continual use of opprobrious names by respondent directed to libellant, and on occasion personal violence to libellant. Marital difficulties began a short time after the marriage and continued until the final separation. Her utterances, vile and indecent, persisted in over a long period of time, transcended the bounds of freedom of expression which the marital relationship may reasonably permit. Respondent obviously entertained a settled hate and aversion toward libellant, and frequently said to him, when he went to work on the railroad where he was employed, that she hoped he would be ground to pieces and brought back on a canvas. Libellant's health was seriously impaired by cohabitation with respondent, and this in itself is strong supporting evidence of indignities. *Picciano v. Picciano,* 110 Pa. Superior Ct. 189, 196, 168 A. 488; *Hare v. Hare,* 95 Pa. Superior Ct. 66, 68. It would serve no purpose to repeat the vulgar language which respondent habitually used, and the vile observations which she was accustomed to making. Respondent often threatened to poison

libellant, and she interfered with his medical treatment. When libellant was in the hospital respondent was ordered to leave and stay away because of her attitude toward him. On several occasions she made a scene in public places, accusing libellant of undue familiarity with clerks and waitresses. Similar accusations were made as to neighbors when he assisted them in their distress resulting from flood. She repeatedly requested him to leave the home. On February 22, 1940, libellant left finally, respondent calling him a vile name and telling him to get out and not to come back.

We find nothing in the testimony to convince us that libellant mistreated respondent, or that her misconduct was provoked by him. Prior to the final separation libellant seems to have conducted himself in a proper manner, and it may be inferred, from respondent's own testimony, that libellant did what he could to make the marriage a success.

There was some testimony produced by respondent as to alleged intimacies of libellant with one Mrs. Boyer. They were not connected in any way with the allegations in the libel, and were subsequent to the acts of indignities which would sustain the libel. The alleged conduct of libellant occurred after libellant and respondent had separated. The cause of divorce had fully accrued prior to libellant's alleged misconduct, and it did not provoke the indignities of which he complains. The doctrine recognized in *Ristine v. Ristine,* 4 Rawle 459 (460), *Mendenhall v. Mendenhall,* 12 Pa. Superior Ct. 290, and *Fay v. Fay,* 27 Pa. Superior Ct. 328, 336, is applicable to an action in divorce based on indignities to the person, and libellant's alleged adultery, committed after his right to a divorce had accrued, would not be cause for refusing the divorce. See The Divorce Law of May 2, 1929, P. L. 1237, § 52, 23 PS §52; *Litch v. Litch,* 89 Pa. Superior Ct. 15, 28; *Anthony v. Anthony,* 160 Pa. Superior Ct. 18, 49 A. 2d 877.

Respondent has assigned as error the action of the court below in discharging the rule issued upon libellant to show cause why he should not pay respondent's counsel fees. See *Boerio v. Boerio,* 134 Pa. Superior Ct. 501, 4 A. 2d 614; *Murray v. Murray,* 78 Pa. Superior Ct. 443. Disposition of the matter was made upon petition and answer. No exception or objection was taken to the court's order. In any event, the allowance of counsel fees rests in the sound discretion of the court below which will not be reversed except for a plain abuse of discretion. *Brong v. Brong,* 129 Pa. Superior Ct. 224, 226, 195 A. 439; Act of May 2, 1929, P. L. 1237, § 46, as amended by the Act of May 25, 1933, P. L. 1020, § 1, 23 PS § 46. The court below, in discharging the rule to show cause, properly said: "When the moving party does not take depositions, or list the case for argument on petition and answer, after the rule to do so has been taken against him and made absolute, he is too late to any longer ask permission to take depositions. He must now have the matter disposed of as required by Rule 209 [Rule of Civil Procedure, No. 209], on petition and answer, and the averments of fact responsive to the petition and properly pleaded in the answer must be deemed admitted." Libellant's answer set forth that he was paying respondent, by order of the court, $14 per week; that respondent was steadily employed by the U. S. War Department from which she received an income more than ample, together with payments made by libellant, to provide for her maintenance and pay her counsel fees; that libellant, due to ill health, was not steadily employed; and that after the payment of $14 per week to respondent he did not have sufficient funds to maintain himself and pay counsel fees for respondent in this action. The court below, accepting these averments as true, did not abuse its discretion in discharging the rule.

Respondent's first assignment of error relates to the action of the court below in making absolute rule to

show cause why the libel should not be amended to set the date of the beginning of the indignities charged at April 1, 1921, rather than August, 1936, as alleged in the libel. See Act of May 2, 1929, P. L. 1237, § 25, as amended by the Act of May 25, 1933, P. L. 1020, § 1, 23 PS § 25. There is nothing in the present case to indicate that the discretion of the court below was not properly exercised. It appeared at the first hearing before the master that some of the alleged indignities occurred prior to August, 1936. Thereupon a petition to amend the libel was presented to the court of common pleas by libellant. An answer to the rule issued on the petition was filed by respondent, and disposition of the rule was made by the court below on petition and answer. The amendment did not add an additional cause for divorce, and the amendment did not introduce and compel the respondent to meet a new question. Respondent was in no way harmed or prejudiced by the extension of the period during which the indignities were alleged to have been committed. Bill of particulars was filed, and respondent presented testimony on all the averments of libellant comprehended within the entire period contained in the amendment. See *Powers' Appeal*, 120 Pa. 320, 327, 14 A. 60.

Respondent now complains for the first time of allowance of an additional master's fee. This is without any merit. Respondent's counsel virtually concedes that she had no standing to object to payment of an additional master's fee, and said: "It is not suggested that the master's fee allowed by the court was in any degree excessive." There was no abuse of discretion by the court below in this respect. See Act of May 2, 1929, P. L. 1237, § 66, 23 PS § 66; Rule No. 101 of the Court of Common Pleas of Dauphin County.

All the assignments of error are overruled, and the decree is affirmed.